IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CLAIRE LAROCHE                    :
                                  :
        Plaintiff,                :
                                  :
v.                                :     Case No. _____
                                  :
ANDREW BURKI                      :     JURY TRIAL DEMANDED
                                  :
        Defendant.                :

## COMPLAINT

Plaintiff Claire LaRoche ("LaRoche"), by counsel, files this Complaint against Defendant Andrew Burki, respectfully stating as follows:

## NATURE OF THE ACTION

1. This civil action is based on Defendant's outrageous, defamatory, and disparaging social media campaign that falsely accuses LaRoche of committing various crimes, including obstruction of justice, illegal firearm transportation and possession, and conspiracy. This action sets forth three causes of action: (1) Defamation; (2) False Light Invasion of Privacy; and (3) Tortious Interference with Prospective Economic Advantage. LaRoche brings this action to quash Defendant's online attacks and hold him accountable for the appreciable damages to her name, reputation, and business interests.

## PARTIES

2. Plaintiff Claire LaRoche is a resident of Buckingham County, Virginia, and is employed as an Associate Professor of Business Law at Longwood University in Prince Edward County, Virginia.

3. Upon information and belief, Defendant Andrew Burki is a resident of Camden County, New Jersey, and he is LaRoche's future ex-son-in-law.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, given the parties are citizens of different States and given the amount in controversy exceeds $75,000, exclusive of interest, costs, and any attorneys' fees.

5. This Court has personal jurisdiction over Defendant by virtue of his residence and regular and systematic contacts with the State of New Jersey and because he has the requisite minimum contacts with New Jersey necessary to constitutionally permit this Court to exercise jurisdiction over him, consistent with traditional notions of fair play and substantial justice by— among other things—committing torts using the internet in the State of New Jersey.

6. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(1), given the Defendant is a resident of Camden, New Jersey, and, upon information and belief, pursuant to 28 U.S.C. § 1391(b)(2), all the actions and/or omissions complained of occurred in this District.

## FACTS COMMON TO ALL CLAIMS

*LaRoche's Educational, Professional, and Community Background*

7. LaRoche is a well-educated and accomplished college professor and former practicing attorney. She is a 1977 graduate of The College of Charleston, where she attained a Bachelor of Arts degree in political science. She attained a Juris Doctor degree of law from the University of South Carolina in 1979. Thereafter, LaRoche attained a Master of Business Administration degree in 1997 from The College of William & Mary.

8. LaRoche was admitted to practice law in South Carolina and Virginia, respectively in 1980 and 1982. While she currently maintains her South Carolina and Virginia State Bar memberships, she is an attorney who is not actively engaged in the practice of law. However, as a pre-requisite and continuing requirement to the practice of law, LaRoche must demonstrate that she

is a person of honest demeanor and good moral character, who possesses the requisite fitness to perform the obligations and responsibilities of a practicing attorney at law. Her failure to do so could undoubtedly result in the denial and/or revocation of her licensure or potential licensure in respective jurisdictions.

9.  In her professional life, LaRoche held positions as an Assistant Trust Officer at the South Carolina National Bank, and as a practicing attorney at private law firms in South Carolina and Virginia.

10. LaRoche has additionally taught as a college professor for almost thirty-five (35) years, and has been employed at Longwood University for over twenty-five (25) years. As evident on the Rate My Professors website, LaRoche is beloved by her students, who resoundingly have anointed her as "one of [ ]Longwood's best professors!" https://www.ratemyprofessors.com/ShowRatings.jsp?tid=46946. Her professional achievements include receiving Longwood University's Excellence in Teaching Award for the College of Business and Economics and Longwood University's Fuqua Excellence in Teaching Award (selected by alumni five years post-graduation), being named a Longwood University Outstanding First Year Advocate and an Outstanding Academic Advisor for its College of Business and Economics, and earning numerous *Best Paper Awards* at both international and national academic conferences.

11. In addition to such accolades, LaRoche is a well-known and well-respected leader among both the Longwood University and larger local communities. At Longwood University, she has held a number of leadership roles over the past twenty-five (25) years, to include: serving on the Longwood Foundation Board as its Chair of the Gift Review Committee, the Longwood Real Estate Foundation Board, and as Chair of the Status and Grievances Committee—whose members

are selected by the faculty at-large. Additionally, she is a representative to the Intercollegiate Athletics Committee. LaRoche also has served as the faculty advisor to the Independent Innovators and Marketing Association, a member of the Faculty Senate, and as the advisor to the Honor Board—a student-elected group that is charged with protecting the basic values of honor and academic integrity at Longwood University. Moreover, LaRoche and her husband created the Ripon and Claire LaRoche Scholarship Fund to support Longwood University's College of Business and Economics. Their philanthropic contribution provides financial assistance to non-traditional students who wish to enroll in college full-time.

12.    Within the larger Farmville, Virginia community, LaRoche is an active member of Johns Memorial Church.

*Defendant's Interest in LaRoche*

13.    Defendant is currently involved in a divorce and child custody proceeding with LaRoche's daughter, who pressed sexual assault charges against Defendant on February 3, 2020.

14.    On February 3, 2020, Defendant was arrested in New Jersey on charges of sexual assault against LaRoche's daughter and illegal possession of a high-capacity magazine firearm. After serving seventy-four (74) days in the Camden County Correctional Facility, Defendant ultimately pled guilty to criminal coercion under N.J.S.A. 2C:13-5A(1). On July 10, 2020, the New Jersey Superior Court of Camden County sentenced Defendant to three years of probation.

*Defendant's Defamatory Statements*

15.    As part of a revenge campaign against his soon-to-be ex-wife (LaRoche's daughter) and the family, Defendant published inflammatory, incendiary, defamatory, and patently false statements about LaRoche across social media platforms, including that LaRoche: (1) illegally transported a firearm across state lines; (2) illegally possessed a "large capacity ammunition

magazine firearm", which is prohibited by law, *e.g.*, N.J.S.A. 2C:39-3J ; (3) planted such illegal firearm at Defendant's residence; (4) framed Defendant for the crime of possessing an illegal firearm; and (5) conspired with her daughter to execute such alleged crimes.

16.     Specifically, on November 25, 2020, in a YouTube video posting, Defendant falsely stated and implied that, just prior to his February 3, 2020 arrest, LaRoche transported a firearm across state lines from Virginia to New Jersey, planted that firearm at his residence, and then conspired with her daughters to lie to police investigators about Defendant's possession of the firearm. The subject video that Defendant posted on YouTube stated as follows:

> *In addition to transporting,* [sic] *"the gun" up from Virginia and planting it for police to find while Andrew Burki was out of the state, Claire LaRoche, Esq. coached both of her daughters on how to frame Andrew Burki in police statements. . . .*

17.     On November 28, 2020, Defendant again falsely stated and implied in a social media post that LaRoche transported an illegal firearm from Virginia to New Jersey and planted said firearm at his residence for the purpose of framing him for the crime of possessing an illegal firearm. The subject Facebook post stated as follows:

> *The following evidence irrefutably shows that Liz LaRoche, 'orchestrated' the fraudulent gun charge along with Sarah Babaa and her mother Claire LaRoche. The four videos contain police interviews regarding the fraudulent gun charge with three of our neighbors and Liz's sister, Julia LaRoche. In the nearly one hour of police audio turned over during discovery from the Collingswood Police Department, Liz LaRoche is never asked a single question about the gun. Additionally, strong evidence was suppressed from both the grand jury and multiple judges which indicates that Claire LaRoche drove the gun up from Virginia for the purpose of framing me.*

18.     As part of and in connection with the Facebook post, Defendant included four videos he had previously posted on YouTube, containing doctored, unauthenticated, and/or altered audio recordings of witness interviews and a conversation Defendant had with his wife (LaRoche's daughter).

19.     Defendant tagged/linked the *Philadelphia Inquirer*, *South Florida Sun Sentinel*, and NJ.com to the foregoing social media posting. The *Philadelphia Inquirer* publishes a news

5

website and two daily newspapers that serve the Philadelphia metropolitan area. As of September 2020, it estimated daily circulation was 193,497. The *South Florida Sun Sentinel* is the main daily newspaper of Fort Lauderdale, Florida, as well as surrounding Broward County and southern Palm Beach County. It is the largest-circulation newspaper in the South Florida region and, as of January 2021, is listed as one of the top ten Florida daily newspapers by circulation. NJ.com is a digital news content provider and website in New Jersey, owned by Advance Publications, and, which, according to The New York Times, in 2012, was the largest provider of digital news in the state at that time.

20. Moreover, Defendant's November 28, 2020 Facebook post reflects that the four videos above have over 1,100 views, in total, with the most viewed video having nearly 600 views. Multiple third parties commented on the post—one of which commented: "That's crazy. She's admitting on video to criminal conspiracy." The comment ostensibly referred to the altered recording that was featured in the videos Defendant included in his Facebook posting wherein LaRoche's daughter responded to Defendant's accusation that she and LaRoche "orchestrated" a plan to put Defendant in prison.

*Defendant's Communication of the Defamatory Statements to Third Parties*

21. The defamatory statements are and have been widely accessible by the public on the internet, respectively at: https://www.youtube.com/watch?v=_CVTEgt7jqQ and https://www.facebook.com/andrew.burki.

22. The defamatory statements are two of multiple similar postings Defendant has published on YouTube and Facebook that concern Claire LaRoche, and that can be found, generally, at: https://www.youtube.com/channel/UCfUj7HYRTSppmKFE14fnz0Q/videos and https://www.facebook.com/andrew.burki.

6

*Falsity of Defendant's Defamatory Statements*

23. The defamatory statements are false.

24. In reality, the subject firearm had already been in Defendant's possession or at his residence. LaRoche's daughters even texted LaRoche a photograph of the instruction manual for the firearm on January 31, 2020. LaRoche had no knowledge of the presence of a firearm—illegal or otherwise—at Defendant's residence until then.

25. Concerned for her daughter's safety, LaRoche and her husband traveled from Virginia to New Jersey on the late afternoon/early evening of February 2, 2020, without any weapons of any kind. On February 3, 2020, LaRoche called law enforcement officials and requested that they remove the illegal firearm from Defendant's residence.

26. LaRoche has never traveled with a legal or illegal firearm—let alone, she never transported a legal or illegal firearm from Virginia to New Jersey, never possessed a firearm with an illegal high-capacity magazine, never placed a legal or illegal firearm in Defendant's residence, and never conspired with anyone to frame Defendant for a weapons crime.

27. During a January 29, 2021 hearing before the New Jersey Superior Court of Camden County, Defendant's attorney stated that Defendant told him that the firearm in question was Defendant's father's gun.

28. In a Certification that Defendant signed and filed with the New Jersey Superior Court for Camden County on May 18, 2021, Defendant affirmed under, penalty of punishment, that "[t]he weapon was a .22 caliber shorter barrel hunting rifle that my dad dropped off to store at our house before my parents moved to Switzerland."

*Defendant's Fault for the Defamatory Statements*

29. Defendant published the defamatory statements with actual or constructive knowledge that they were false or with reckless disregard as to whether they were true or false. He knew the subject firearm was his and had not been transported to him as part of any framing conspiracy.

30. Defendant published the defamatory statements with the intent to destroy LaRoche's personal and professional reputation and deter third parties from associating with her. He was well aware of LaRoche's reputation and employment as a professor and a former and prospective practicing attorney. He was also well aware of her community interests and involvement.

31. Defendant used LaRoche's professional suffix "Esq." when referring to her in the defamatory statements to highlight and expose LaRoche within her professional and client community.

32. Defendant made and published other false, negative statements about LaRoche, at or around the same time that he made the defamatory statements, including that LaRoche engaged in abusive conduct to her children and grandson and that she is a bigot.

33. Defendant exhibited animus, hostility, and ill-will toward LaRoche. He has widely accused LaRoche of criminal activity, purposefully altered and misstated a conversation she had with her grandson (that he surreptitiously recorded), and has repeatedly attacked her honesty, morals, and character.

*LaRoche's Damages*

34. As a direct and proximate result of Defendant's publicized and tortious attack campaign, LaRoche's personal and professional reputation—as a current professor, a former and prospective practicing attorney, and respected member of her community—have been injured. Her

character, reputation, and standing in her respective professional and personal communities have been called into question.

35. As a direct and proximate result of Defendant's publicized and tortious attack campaign, LaRoche has suffered, and continues to suffer, economic losses.

36. As a direct and proximate result of Defendant's publicized and tortious attack campaign, LaRoche has incurred costs and expended resources to investigate, defend against, and mitigate reputational and other injuries. For example, LaRoche has hired lawyers and other professionals to help defend against attacks on her reputation and business interests.

## COUNT I – DEFAMATION

37. The allegations in the preceding paragraphs are incorporated as if fully set forth and re-alleged herein.

38. Defendant made false, misleading, and defamatory statements of fact about LaRoche. These published statements were not opinions or mere name-calling; rather, they consist of verifiable statements that can be proved true or false.

39. Defendant's statements contain underlying factual assertions claiming that LaRoche committed crimes.

40. Thus, the defamatory statements are defamatory *per se*, as they expressly and implicitly allege that LaRoche committed crimes and acts of moral turpitude, which impute dishonest, immoral, illegal, and/or unethical conduct to her. These statements have also prejudiced LaRoche in her trade and profession.

41. Defendant published the defamatory statements to one or more persons other than LaRoche, posting them for widespread public consumption on YouTube, Facebook, and Twitter.

42. Defendant's statements concerning LaRoche were neither justified as a protected form of speech nor were they privileged communications.

43. Defendant published the defamatory statements with actual or constructive knowledge that they were false or with reckless disregard as to whether they were true or false—and in an effort to wholly malign LaRoche's reputation within her community and within her current academic and former and prospective legal professions.

44. Alternatively, Defendant published the defamatory statements believing them to be true—but lacking reasonable grounds for such belief—or negligently failing to ascertain the facts upon which the defamatory statements were based.

45. The defamatory statements harmed LaRoche, by tending to lower her reputation in the estimation of the community and/or deter third persons from associating or dealing with her.

46. As a direct and proximate result of the defamatory *per se* statements, it is presumed that LaRoche suffered damages.

47. Moreover, LaRoche will continue to suffer damages as long as the defamatory statements remain accessible for vast public consumption. Her reputation for honesty and integrity have been harmed as a result of the defamatory statements.

48. As a direct and proximate result of the defamatory statements, LaRoche has further suffered financial and other damages in an amount to be proven at trial.

49. As a direct and proximate result of Defendant's willful and wanton conduct in publishing the defamatory statements, LaRoche is entitled to punitive damages up to the legally permissible maximum amount.

### COUNT II – FALSE LIGHT INVASION OF PRIVACY

50. The allegations in the preceding paragraphs are incorporated as if fully set forth and re-alleged herein.

51. LaRoche is a private individual with no public exposure.

52. Defendant gave publicity to matters concerning LaRoche about her personal life that are false.

53. Defendant either knew that the publicized material was false and would place LaRoche in a false light, or he acted with reckless disregard as to the falsity of the publicized matters and the false light in which LaRoche would be placed.

54. Defendant's untrue publicized statements about LaRoche have the capacity to (and did) give rise to a false public impression of her.

55. Defendant published the false statements about LaRoche worldwide via the internet. Specifically, those false statements reached the general public via Defendant's social media posts on Facebook, YouTube, and Twitter.

56. Defendant's false, publicized material about LaRoche is a gross misrepresentation of her character, ethics, beliefs, and conduct and are of a nature that a reasonable person in LaRoche's position would be expected to find the material highly offensive or feel aggrieved. Indeed, her reputation for honesty and integrity have been irreparably harmed as a result of Defendant's false, publicized statements.

57. Defendant's publicized statements have caused LaRoche appreciable injuries, damages, and losses.

58. As a direct and proximate result of the publicized statements, LaRoche has suffered financial and other damages in an amount to be proven at trial.

59. As a direct and proximate result of Defendant's willful and wanton conduct in publicizing false material about LaRoche, she is entitled to punitive damages up to the legally permissible maximum amount.

## COUNT III – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

60. The allegations in the preceding paragraphs are incorporated as if fully set forth and re-alleged herein.

61. At all times relevant to the events described herein, LaRoche had a business expectancy of continuing to be gainfully employed as an Associate Professor of Business Law at Longwood University. She thus had a probability of future economic benefit from that employment, which she had spent over twenty-five (25) years cultivating at Longwood University.

62. At all times relevant to the events described herein, LaRoche has maintained her memberships with the South Carolina and Virginia State Bars, albeit as an attorney who is not currently practicing law. Given the nature of her membership, she could administratively petition the South Carolina and/or Virginia State Bars to update her status to an attorney who is actively engaged in the practice of law. Indeed, she has aspirations to do so in the future. Thus, LaRoche additionally maintains a business expectancy of pursuing legal work as an attorney and, therefore, had a probability of future economic benefit from that prospective employment. Defendant's false and defamatory published statements about LaRoche were made with the intent to hinder her ability to practice law.

63. Defendant had actual and/or constructive knowledge and/or notice of the existence of this advantageous business expectancy in the field of academia and/or law and its probability of future economic benefit within the higher educational and/or legal sectors.

64. Defendant maliciously smeared LaRoche's personal and professional character by intentionally and unjustifiably interfering with this business expectancy and LaRoche's realization of economic benefit therefrom, by publishing the defamatory statements and false matters on multiple public forums, such as YouTube, Facebook, and Twitter.

65. Absent Defendant's intentional and improper conduct, LaRoche reasonably would have realized greater economic benefit from her employment. Particularly, Defendant's character assassination efforts have undoubtedly impacted LaRoche's professional trajectories as a professor and/or as an attorney.

66. As a direct and proximate result of Defendant's intentional and improper conduct, and its resulting interference with LaRoche's business expectancy, LaRoche has incurred, is suffering, and will suffer continuing and/or permanent damages, including without limitation, lost revenue, as well as the irreparable harm to her personal and professional reputation among her community and professional colleagues.

67. As a direct and proximate result of Defendant's willful and wanton conduct in intentionally and improperly interfering with the foregoing business expectancy, LaRoche is entitled to punitive damages up to the legally permissible maximum amount.

## PRAYER FOR RELIEF

WHEREFORE, LaRoche hereby respectfully requests judgment against Defendant Andrew Burki for the following:

1. Presumed damages to which LaRoche is entitled for Defendant's defamatory *per se* statements about her;

2. Compensatory damages to be proven at trial;

3. Punitive damages to be proven at trial, in the legally permissive maximum amount;

4. Costs, expenses, attorneys' fees, treble damages, and other legally permissive recoverable amounts;

5. Pre- and post-judgment interest as allowed by law;

6. Equitable relief, including an Order that: (A) enjoins the continued publication and use of the false, defamatory, and disparaging statements; and (B) requires Defendant to retract and remove all such previously published statements; and

7. Any other and further relief as the Court deems just and proper.

## JURY DEMAND

TRIAL BY JURY IS DEMANDED ON ALL CLAIMS SO TRIABLE.

Dated: July 21, 2021

Respectfully submitted,

**CLAIRE LAROCHE**

By her attorneys,

*/s/ Stephanie Imbornone*
Stephanie Imbornone, NJ: #014022011
**GORDON REES SCULLY MANSUKHANI, LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T: (973) 549-2503
F: (973) 377-1911
simbornone@grsm.com

Joseph L. Meadows, VSB #92729 (Motion for Admission *pro hac vice* to be filed)
Wesley D. Allen, VSB #76458 (Motion for Admission *pro hac vice* to be filed)
**GORDON REES SCULLY MANSUKHANI, LLP**
1101 King Street, Suite 520
Alexandria, Virginia 22314
T: (202) 399-1009
F: (202) 800-2999
jmeadows@grsm.com
wallen@grsm.com

## VERIFICATION

I SWEAR AND AFFIRM under the penalty of perjury, to the best of my knowledge, information and belief, that the contents of this Complaint are true and accurate and that Plaintiff is entitled to the sum sought therein, exclusive of set-off and just matters of defense.

_____
Claire R. LaRoche