**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| CLAIRE LAROCHE, | : :  |
| Plaintiff, | : : Civil No. 21-13918 (RBK/AMD) |
| v. | : : **OPINION** |
| ANDREW BURKI, | : :  |
| Defendant. | : : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Andrew Burki's Amended Motion for Partial Summary Judgment (the "Motion" or "Mot.") (ECF No. 124). For the reasons set forth below, the Court **DENIES** Burki's Motion.

**I.     BACKGROUND**

**A.     Procedural Background**

We begin with the case's procedural background. Plaintiff Claire LaRoche filed her Complaint against Burki on July 21, 2021. (ECF No. 1, "Complaint"). That Complaint contained three claims: (1) defamation; (2) false light; and (3) tortious interference. (*Id.* at ¶ 1). After obtaining an extension, Burki filed an Answer and Counterclaims against LaRoche on August 31, 2021. (ECF No. 6). LaRoche answered the counterclaims on October 5, 2021, also after obtaining an extension. (ECF No. 20). Burki then filed an amended answer on October 19, 2021, and, on October 20, 2021, U.S. Magistrate Judge Ann Marie Donio sealed the original answer to substitute a minor child's initials for his full name. (ECF Nos. 22–24, 26–27). The parties then moved to discovery.

1

After more than a year of discovery, Burki filed his original motion for partial summary judgment on January 16, 2023. (ECF No. 107). Judge Donio ordered it timely filed by consent. (ECF No. 109). After some issues about whether and what redactions to that motion were necessary, on January 31, 2023, the Court heard from the parties and ordered them to meet and confer to agree on any redactions. (ECF No. 118). After the parties agreed on those redactions, on February 14, 2023, the Court ordered Burki to make those redactions and refile his motion for partial summary judgment with the redactions included. (ECF No. 123). On February 17, 2023, Burki filed the instant Motion, only seeking summary judgment on LaRoche's defamation claim. (ECF No. 124). LaRoche opposed the Motion on February 21, 2023. (ECF No. 125, "Pl. Opp'n"). The next day, the Court stayed all proceedings for ninety days and ordered the parties to attend mediation. (ECF No. 126). That mediation was unsuccessful. Burki never filed a reply to LaRoche's Opposition.

Additionally, along with the Motion, as required by New Jersey Local Civil Rule 56.1, Burki filed a Statement of Material Facts Not in Dispute ("Statement of Material Facts" or ("MF"). (ECF No. 124-3). LaRoche responded to the Statement of Material Facts ("Resp. to MF") denying, disputing, or otherwise objecting to much of Burki's Statement of Material Facts. (ECF No. 125-1). Alongside that, LaRoche also filed her own Supplemental Statement of Disputed Material Facts ("Supplemental Statement of Facts" or "Supp. MF"). (ECF No. 125-2). Burki never responded to LaRoche's Supplemental Statement of Facts. Because Burki failed to address those facts, per Federal Rule of Civil Procedure 56(e)(2), to the extent Burki's initial Statement of Material Facts does not contradict the facts asserted in LaRoche's Supplemental Statement of Facts, we will consider those facts undisputed and Burki to have admitted to them.

**B.     Factual Background**

Burki is LaRoche's ex-son-in-law. (MF at ¶ 1). Burki and LaRoche's daughter were married and have a son. (*Id.* at ¶ 4; Supp. MF at ¶¶ 2, 9). In February 2020, Burki and LaRoche's daughter began divorce and child custody proceedings. (MF at ¶ 1). Those proceedings were hotly contested and, by all accounts, hostile. (*Id.*; Supp. MF at ¶ 13). We do not need to get into all the sordid details of those proceedings because the issue before us relates only to alleged defamatory statements Burki made about LaRoche. We will, however, cover some background as it relates to this Motion's disposition.

On February 3, 2020, New Jersey police arrested Burki and charged him with three counts of sexual assault, two counts of aggravated assault domestic violence, and one count of illegal possession a high-capacity magazine firearm. (Supp. MF at ¶ 10; LaRoche Exhibit 5 at 1). Burki spent seventy-four days in jail, and, on April 17, 2020, he pled guilty to a single count of fourth-degree criminal coercion. (LaRoche Exhibit 5 at 1). On July 10, 2020, the Superior Court of New Jersey, Camden County sentenced him to time served and three years of probation. (*Id.*).

Not long after, Burki published the two videos and social media posts at issue in this case. In summary, these posts allege that the LaRoche family conspired to frame Burki for a crime so that police would arrest Burki and thus make it easier for Burki's wife (LaRoche's daughter) to divorce him and win custody of their son. (*See* LaRoche Exhibits 11–13; MF at ¶¶ 1–2). Part of that plot, according to Burki, involved LaRoche planting a gun at Burki's home. (*Id.*).

As the videos and posts relate specifically to LaRoche—and not other people who are not party to this case—in a November 25, 2020 YouTube video, Burki wrote: "In addition to transporting, 'the gun' up from Virginia and planting it for police to find while Andrew Burki

3

was out of the state, Claire LaRoche, Esq. coached both of her daughters on how to frame Andrew Burki in police statements. Unfortunately for the entire LaRoche family, Julia and Liz couldn't keep their fraudulent accusations straight." (LaRoche Exhibit 12). Additionally, in a November 28, 2020 video Burki wrote: "Also included are a taped confession of Liz admitting to, 'orchestrating' false charges with [someone else] and Claire LaRoche as well as strong evidence that was suppressed from the grand jury which indicates Claire LaRoche brought the gun from Farmville, Virginia prior to calling the police to come, 'find it.'" (LaRoche Exhibit 13). He also wrote: "Liz LaRoche on 6-20-2020 irrefutably confessing to, 'orchestrating' the fraudulent gun charge with [someone else] and Claire LaRoche." (*Id.*). Burki also posted on Facebook that same day: "The following evidence irrefutably shows that Liz LaRoche, 'orchestrated' the fraudulent gun charge along with [someone else] and her mother Claire LaRoche. The four videos contain police interviews regarding the fraudulent gun charge with three of our neighbors and Liz's sister, Julia LaRoche. In the nearly one hour of police audio turned over during discovery from the Collingswood Police Department, Liz LaRoche is never asked a single question about the gun. Additionally, strong evidence was suppressed from both the grand jury and multiple judges which indicates that Claire LaRoche drove the gun up from Virginia for the purpose of framing me." (LaRoche Exhibit 11).

      The parties have two different accounts of what happened with this gun. According to Burki, sometime in the past, Burki's father brought a .22 caliber hunting rifle to Burki's home for safekeeping because his father was moving to Switzerland. (MF at ¶ 6). Although Burki and his wife accepted the rifle, they did so in a locked box that they never opened. (*Id.* at ¶ 7). Burki and his wife—again, according to Burki—also decided that because they had a baby in the house, they would send the gun to LaRoche's home in Virginia. (*Id.* at ¶ 8). Burki claims he

never saw the gun again after that, so he assumed his wife brought it to LaRoche's home in Virginia. (*Id.* at ¶ 9). As he claims in the videos and posts recounted above, Burki then claims that LaRoche took the gun from her home in Virginia, drove it up to his home in New Jersey, and planted it there for her daughters and police to discover, so that police could charge and arrest Burki. (*See* LaRoche Exhibits 11–13).

On the other hand, according to LaRoche, after Burki's father dropped the gun off with Burki before moving to Switzerland, Burki's wife (LaRoche's daughter) told Burki "she didn't think they should have a gun in the house because they have a small child and suggested taking the gun to her parents' home in Virginia." (Supp. MF at ¶ 24). According to LaRoche, Burki and his wife never had another conversation about the gun, and the gun always remained in Burki's possession at his house. (*Id.* at ¶¶ 24, 28).

As a result of these alleged defamatory posts, LaRoche, a Longwood University professor, claims she has lost promotion and pay opportunities, including eligibility for a full, tenured professorship at Longwood. (*Id.* at ¶ 40). She also claims she has suffered humiliation, mental anguish, emotional distress, and other physical ailments including headaches, nausea, shortness of breath, insomnia, and chest pains. (*Id.* at ¶ 41).

## II.   LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of a "genuine issue of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d

Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), and credibility determinations are for the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.     DISCUSSION

Burki moves only for summary judgment on LaRoche's defamation claim. As LaRoche points out in her opposition, he does not move for summary judgment on her two other claims: false light and tortious interference. As such, we confine our analysis to the defamation claim alone, and LaRoche's two other claims will proceed regardless of this Motion's outcome.

As an initial matter, because we sit in diversity on a state law defamation claim, we must decide which State's law applies: New Jersey or Virginia. When sitting in diversity, federal courts usually must employ the conflict and choice of laws rules of the State in which the court sits. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 65 (2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494–96 (1941)). Although New Jersey employs what it calls the "most significant relationship" standard to determine choice of law issues in tort cases such as this, the first step of such an inquiry is to determine whether there exists a true conflict of laws. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). If no real conflict exists, then there is no choice of law issue for the Court to resolve, and we move forward using New Jersey law. *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007).

Here, we agree with LaRoche that there is no material difference between Virginia and New Jersey defamation law. To prove defamation in Virginia, plaintiffs must show "(1) publication of (2) an actionable statement with (3) the requisite intent[,]" where "actionable" means a "statement [that] is both false and defamatory." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015). In New Jersey, plaintiffs must show "that the defendant (1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff." *Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996). They must also show fault of at least negligence. *Id.* We find the substance of these two defamation standards essentially identical. As such, we will proceed under New Jersey law.

There exist genuine disputes of material fact that preclude us from granting Burki summary judgment on LaRoche's defamation claim. There are genuine issues disputed between

the parties as they relate to the alleged claims' falsity and Burki's level of fault that a trier of fact must resolve. We will address each of those topics in turn.

      A.      **Falsity**

Whether Burki's allegedly defamatory statements are true or false is plainly a material fact because his statements must be false for LaRoche to succeed on a New Jersey defamation claim. If his statements are true, her claim fails. Burki, as the movant here, bears the burden of showing an absence of a genuine dispute pertaining to falsity. *Aman*, 85 F.3d at 1080. In a defamation action, truth is both a common law defense as well as an absolute defense under the First Amendment. *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011). The statement need not be perfectly accurate; instead, the law is more concerned with the statement's "substantial truth." *Id.* "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting'" of the statement is true. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (quoting *Heuer v. Kee*, 59 P.2d 1063, 1064 (Cal. Dist. Ct. App. 1936)).

There exists a genuine dispute about whether Burki's allegedly defamatory statements are substantially true. To summarize, his published statements were that Claire LaRoche brought a gun from Virginia to his home in New Jersey, planted it there, called the police, then coached her daughters on how to frame Burki to the police. That is the gist of what he must show there is no genuine dispute about.

As one of his prime pieces of evidence to establish that his allegedly defamatory statements are true, Burki points to a recorded video conversation he had with his ex-wife during which he argues his ex-wife admitted that she "orchestrated" the gun charges against him with her mother. This conversation, he maintains, proves his statements are true. We do not agree.

First, when heard in its full context, the conversation between Burki and his ex-wife proceeds as follows:

> **BURKI** (to his ex-wife): And you orchestrated this whole thing with Sarah and your mom [Claire LaRoche].
>
> **LIZ LAROCHE**: It wasn't orchestrated. The only thing that was orchestrated was the gun.

(Burki Exhibit B2). Perhaps on its own, removed from in its entire context, the statement "the only thing that was orchestrated was the gun," would be the smoking gun Burki believes it is. And maybe to a jury it will be. But in context—particularly at this stage where we construe all facts and inferences "in the light most favorable to the non-moving party," *Boyle*, 139 F.3d at 393—it is not. The first thing Liz LaRoche says is, "It wasn't orchestrated." This complicates what the proceeding purported admission means because it seems to contradict what she says next. It allows for different interpretations, and it is not this Court's job to weigh the evidence and decide which interpretation is best at summary judgment. *Anderson*, 477 U.S. at 249. Thus, this becomes something that a jury or other fact finder must muddle through, not this Court at this stage.

At minimum, when viewing it in the light most favorable to LaRoche, this exhibit does not move the needle enough to establish truth. To do so, Burki needs to show that this conversation demonstrates that LaRoche somehow transported a hunting rifle from her home in Virginia to his home in New Jersey while he was away, planted it there, called the police so they could find it, then coached her daughters on how to frame Burki to the police. This conversation does not do that. Even if we take Burki's interpretation as true, Liz LaRoche saying she and her mother "orchestrated" "the gun" does not necessarily mean Claire LaRoche took all the many elaborate steps of which Burki accuses her, including driving the gun up from Virginia and

9

planting it in his home. Here at summary judgment, where reasonable inferences go toward the nonmovant, this conversation does not establish that what Burki posted was substantially true.

LaRoche does not provide a lot of her own evidence to support her contention that Burki's claims are false, but she presents enough to send the defamation claim to a jury. LaRoche herself has claimed in her sworn, verified complaint that all Burki's claims he published online are false. (Complaint at ¶¶ 15–28). LaRoche also submitted a sworn affidavit from her husband in which he swears that the gun was never at his home in Virginia, no one ever asked him to store such a gun there, and he has never personally seen such a gun. (LaRoche Exhibit 16). He also swears that there are EZ Pass transactions to track his and wife's travels to New Jersey on February 2, 2020 and no such transactions recorded in January 2020, when Burki alleges LaRoche would have driven the gun up to plant it. (*Id.*; *see also* LaRoche Exhibit 17). Are these statements self-serving? Are they credible? It does not matter right now because that is for a jury to decide, not this Court at summary judgment. For now, it is contradictory record evidence that creates a genuine dispute.

Burki also presents as evidence the opinion of the trial court judge during Burki's and his ex-wife's divorce and custody proceedings. LaRoche objects that this evidence is inadmissible hearsay. (Pl. Opp'n at 12). Under Federal Rule of Civil Procedure 56(c)(2), parties "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." In the Third Circuit, courts may consider hearsay statements at summary judgment "if they are capable of being admissible at trial." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). In *Fraternal Order*, the Third Circuit held that the district court could have relied on the out-of-court statements provided

because they would have been admissible at trial: the party identified who the declarants were and noted that they were all available to testify. *Id.* at 238–39.

That is not the case here. Burki does not purport to call the trial court judge in the custody proceedings as a witness at trial here to testify about her findings in the custody proceeding. Instead, he simply presents the transcript of her judgment and decision in that case and seemingly offers it to prove the truth of its contents—that LaRoche lacks credibility, that LaRoche was trying to win her daughter's custody proceedings "by any means necessary," etc. (*See* Mot. at 5; Burki Exhibit D). Thus, we cannot consider these out-of-court statements at this stage because we do not believe they would be admissible at trial.

Even if we did consider this evidence, though, we do not believe it is enough to show a lack of a genuine dispute about Burki's statements' falsity. In fact, as LaRoche points out, the judge literally said she did not believe LaRoche planted the gun. (Burki Exhibit D at 17–18). So, even if we did consider these out-of-court statements as evidence here, we believe that they do the opposite of what Burki contends, and they actually support a finding that a genuine dispute exists as to whether Burki's statements are true or false.

Burki also makes, almost in passing, two other arguments. First, he argues that his statements are opinions and therefore immune from defamation claims. We will dispose of this argument quickly because we are not sure in what world anyone could consider his statements opinions. *See Ward v. Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994) ("Factual statements, unlike non-factual statements, are uniquely capable of objective proof of truth or falsity. Opinion statements, in contrast, are generally not capable of proof of truth or falsity because they reflect a person's state of mind."). Burki did not say he thinks LaRoche is a mean or bad person, which would be his opinion. He accused LaRoche of conspiring with her daughters to frame him for a

11

crime and taking several active steps to complete the conspiracy, including transporting a gun from Virginia to New Jersey. Those are not opinions. They are, as Burki himself wrote, verifiable statements. (*See* Mot. at 8). They are "capable of objective proof of truth or falsity." *See Ward*, 643 A.2d at 979. As such, they are not protected or immune from LaRoche's defamation claim, and whether these statements are true or false remains genuinely disputed.

Second, he argues that his statements were "epithets, insults, name calling, profanity and hyperbole," and thus are not actionable in a defamation claim. (Mot. at 8). For the same reasons as above, we dismiss this contention outright. These statements were not merely insults or name-calling. They were verifiable statements capable of objective proof of their truth or falsity.

As such, a genuine dispute exists about whether Burki's statements were true or false. We deny his motion for summary judgment on those grounds.

### B. Fault

In addition to falsity, Burki's level of fault is also a material fact. In New Jersey, plaintiffs, if they are a private person (not a public figure or public official), must show that the defendant who made the allegedly defamatory statements at least made them negligently. *Feggans*, 677 A.2d at 775. LaRoche is a private person, not a public figure. Public figures are those who have achieved a certain status "by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). Although a professor could in theory rise to that level, Burki provides no evidence that LaRoche benefits from "pervasive fame or notoriety" or has "voluntarily inject[ed] [her]self or [was] drawn into a particular public controversy[,]" thereby becoming a limited public figure. *Id.* at 351. She is therefore a private person for defamation purposes, and a

12

negligence standard applies for Burki's level of fault. *Costello v. Ocean Cty. Observer*, 643 A.2d 1012, 1021 (N.J. 1994) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).

A genuine dispute exists about whether Burki negligently posted his allegedly defamatory comments. Burki argues that he genuinely believed the statements he posted were true, and he only posted them to exonerate himself, not injure LaRoche personally. (Mot. at 9). On the other hand, LaRoche argues that Burki did not have a well-founded, good-faith belief in his statements' truth and thus he was at least negligent in posting them. (*See* Pl. Opp'n at 14). Both parties point to contradictory evidence in the record to support their arguments, thus creating a classic example of a genuine dispute which forces a court to deny summary judgment and allow a jury to resolve the issue.

As part of his argument, Burki offers a video where his ex-wife mocks him as being "so anti-gun." (Mot. at 10). Specifically, she said, "And plus you're so 'anti-gun.' . . . I don't think it's funny. I think it's ironic." (Burki Exhibit G). Burki argues this shows that he would not have kept a gun at the house because he is "so anti-gun" and thus he genuinely believed the gun was not in his house and must have been moved there by LaRoche. (*See* Mot. at 10). But, read in LaRoche's favor, that same statement by Burki's ex-wife could easily be understood to mean: it's amazing you had this gun in the house considering you are so anti-gun. Both readings are plausible, and at this stage we must interpret all facts and their corresponding inferences in LaRoche's favor.

Additionally, the "orchestrated" video Burki presents that we recounted above also does not show that he was not negligent when he posted the allegedly defamatory statements. Even if we take Burki at his word that he believed his ex-wife "orchestrated" the gun charges with LaRoche, her statement in this video does not tend to show he was not negligent when he

13

publicly accused LaRoche of driving a gun up to his house and planting it there. Liz LaRoche says, "It wasn't orchestrated. The only thing that was orchestrated was the gun." (Burki Exhibit B2). Nothing in that statement concretely shows that LaRoche did anything that Burki accused her of online, especially when we interpret these facts and their inferences in LaRoche's favor.

The parties also offer portions of Burki's deposition to bolster their arguments. LaRoche notes that in his deposition, Burki admits that his ex-wife never told him that she actually took the gun to her parents' home in Virginia. (LaRoche Exhibit 8 at 219–21). That is true. But he also says that his ex-wife told him that "she was going to take it down to Virginia[.]" (LaRoche Exhibit 8 at 277). This is compelling evidence that there is a genuine issue for a jury to decide about whether Burki negligently posted the alleged defamatory statements. On the one hand, Burki contends he sincerely believed his ex-wife brought the gun down to Virginia and thus thought the only way it could have ended up back at his house was if LaRoche brought it there. To show that, he points to record evidence (albeit his own deposition but record evidence all the same) to support that belief. On the other hand, LaRoche does not rest upon mere allegations, but rather points to record facts of her own to "contradict the facts identified by" Burki. *Corliss*, 247 F. App'x at 354. She notes that he also admitted that his ex-wife never once told him she actually took the gun to Virginia. This is a genuine dispute that a jury must resolve.

The only other evidence presented by either side on this issue are each parties' own beliefs. Burki claims he never saw the gun again after he spoke with his wife about sending it to Virginia. (Mot. at 10). LaRoche swears the gun was never brought to her house, and she and her husband swear she never took any gun back up to New Jersey. (Pl. Opp'n at 5–6, 12; Complaint at ¶¶ 15–28; LaRoche Exhibit 16). This continues to show that a genuine dispute exists.

14

It is not the Court's job at this point to make credibility determinations and findings of fact, but merely to decide whether genuine issues of material fact exist for a jury to decide. *See Anderson*, 477 U.S. at 249; *see also Big Apple BMW, Inc.*, 974 F.2d at 1363. There are at least two genuine disputes of material fact that exist in this case. We believe given all the exhibits presented by LaRoche and Burki and their competing Statements of Material Facts that a reasonable jury could return a verdict for LaRoche, the nonmovant here. As such, we will deny the Motion and LaRoche's defamation claim will proceed along with her false light and tortious interference claims to trial.

### IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Burki's Motion. An appropriate Order follows.


Dated: August 3, 2023                                      /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge