IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| CLAIRE LAROCHE, | : | Civil No. 21-13918 (RBK/AMD) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| ANDREW BURKI, | : |  |
|  | : |  |
| Defendant. | : |  |

**PLAINTIFF'S TRIAL BRIEF**

This is a defamation-by-internet case brought by plaintiff Claire LaRoche.  It follows

criminal and domestic violence proceedings against defendant Andrew Burki for sexual assault as

alleged by his ex-wife, "L" (plaintiff's daughter), and related gun charges, as well as divorce/child

custody proceedings initiated by defendant, which involved "S," the then four-year-old grandchild

of plaintiff and child of L and defendant.  During these state court proceedings, and after entry of

a final restraining order and criminal conviction against defendant, he turned to the internet to post

defamatory *per se* statements about plaintiff.  By YouTube and Facebook, defendant falsely

accused plaintiff of transporting a gun across state lines, planting the gun in his house, and then

conspiring with her daughters to frame him for a weapons crime, as shown in the posted statements

below with emphasis added:

> In addition to transporting, "the gun" up from Virginia and planting it for police to find
> while Andrew Burki was out of the state, **Claire LaRoche, Esq.** coached both of her
> daughters on how to frame Andrew Burki in police statements. . . .

> The following evidence irrefutably shows that [L], 'orchestrated' the fraudulent gun charge
> along with Sarah Babaa and her mother **Claire LaRoche**.  The four videos contain police
> interviews regarding the fraudulent gun charge with three of our neighbors and [L]'s sister,
> [J].  In the nearly one hour of police audio turned over during discovery from the

> Collingswood Police Department, [L] is never asked a single question about the gun. Additionally, strong evidence was suppressed from both the grand jury and multiple judges which indicates that **Claire LaRoche** drove the gun up from Virginia for the purpose of framing me.

*See* ECF 145 (Joint Final Pretrial Order at Stipulation No. 14).  In total, the online defamatory statements reached hundreds of thousands of people.  The statements caused plaintiff—a lawyer, college professor, and respected member of her local Virginia community—significant reputational and other harm that continues to this day.[1]

The defamatory statements were and are false.  Plaintiff did not transport a gun across state lines, plant it in defendant's house, or conspire with her daughters to frame defendant for a weapons crime.  Defendant, who has known plaintiff a long time, knew the defamatory statements would harm her reputation.  Importantly, he knew the statements were false and recklessly disregarded the truth.  The truth didn't matter.  He was out to retaliate against plaintiff and the LaRoche family because he believed they set him up on false charges.

After this lawsuit was filed, defendant brought counterclaims alleging plaintiff violated federal and state wiretap laws and invaded his privacy, when, in good-faith concern for the safety and security of S, a USB recording device was placed in S's clothes on April 6 and 7, 2021, before defendant's parental visitation with S.  The counterclaims lack merit.  Defendant lacked any reasonable expectation of privacy during any recording.  Moreover, S consented vicariously to any recording by and through a good faith concern for the child's safety and security.  *See generally D'Onofrio* and *Cacciarelli* (discussed below).

---

[1] To sum up the cast of characters, defendant is the ex-son-in-law of plaintiff, the ex-husband of plaintiff's daughter L, the ex-brother-in-law of plaintiff's other daughter J, and the father to minor S who he shares with the mother L.

**Background**

Plaintiff filed this action on July 21, 2021, asserting three claims against defendant: defamation (Count I); false light (Count II); and tortious interference with prospective economic advantage (Count III).  Defendant answered on August 31, 2021, denying the claims against him and counterclaiming for state and federal counts of wiretap law violations (Counts I and II, respectively) and invasion of privacy (Count III).  Following almost a year and a half of discovery, defendant filed a motion for partial summary judgment on the defamation claim.

On August 3, 2023, this Court denied the motion.  ECF 129 (Opinion).  Applying New Jersey law, the Court ruled that "[t]here are genuine issues disputed between the parties as they relate to the alleged claims' falsity and Burki's level of fault that a trier of fact must resolve."  *Id*. at 7-8.  The Court made other important rulings:

- *Gist of the defamatory statements*.  "To summarize, his published statements were that Claire LaRoche brought a gun from Virginia to his home in New Jersey, planted it there, called the police, then coached her daughters on how to frame Burki to the police.  That is the gist of what he must show there is no genuine dispute about."  *Id*. at 8.

- *Hearsay of family law rulings*.  "Thus, we cannot consider these out-of-court statements [transcript and decision of J. Charney] at this stage because we do not believe they would be admissible at trial."  *Id*. at 11.

- *Opinion defense*.  "We will dispose of this argument quickly because we are not sure in what world anyone could consider his statements opinions."  *Id*.

- *Hyperbole defense*.  "These statements were not merely insults or name-calling. They were verifiable statements capable of objective proof of their truth or falsity." *Id*. at 12.

- *Private figure / negligence standard*.  "LaRoche is a private person, not a public figure...She is therefore a private person for defamation purposes, and a negligence standard applies for Burki's level of fault."  *Id*. at 12-13.

Unfortunately, the parties' efforts to settle this case before, during, and after summary judgment, including with the assistance of court-ordered mediation, failed.  Trial is necessary.

3

**Legal Issues**

Plaintiff contends the below section summarizes the legal issues and will be presenting

jury instructions accordingly.

*Defamation*.  Whether defendant (1) made and published statements about plaintiff to a

third party, (2) that are false and defamatory, (3) at least negligently without due care, and (4)

resulted in reputational injury and other damages.[2]  For presumed damages, whether the

statements are defamatory per se because they accuse plaintiff of crimes and acts of moral

turpitude, dishonest and unethical conduct, and/or acts that prejudice plaintiff in her trade and

profession.[3]  For compensatory damages, whether the statements tend to subject plaintiff to

"hatred, contempt or ridicule" or "cause[ ] others to lose good will or confidence" in her or

"lower [her] in the estimation of the community or to deter third persons from associating or

dealing with [her]."[4]  For punitive damages, whether defendant made the statements maliciously

---

[2] *See Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996); *LY Berditchev, Corp. v. Truss Cosmetics Corp.*, 2023 WL 334539, at *7 (D.N.J. Jan. 20, 2023).  The Court will apply New Jersey defamation law as the law of the forum state because there is no conflict of laws between Virginia (where plaintiff lives and suffered reputational harm) and New Jersey (where defendant lives and made the defamatory statements).  The Court will also apply New Jersey punitive damages law.  *See Freedom Mort. Corp. v. LoanCare, LLC*, 2023 WL 4366288 (D.N.J. July 6, 2023) (applying New Jersey punitive damages law over Virginia law given the "location of the wrongdoer's conduct, principal place of business, and incorporation state" under New Jersey's most-significant-relationship test for punitive damages).

[3] *See W.J.A. v. D.A.*, 43 A.3d 1148, 1154 (N.J. 2012) ("Presumed damages apply in libel cases."); *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 377 (D.N.J. 2004) ("if a defamatory statement constitutes libel per se, damages are presumed to exist and need not be shown").  *See also G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011) ("A statement falsely attributing criminality to an individual is defamatory as a matter of law.") (citation omitted); *Ward v. Zelikovsky*, 643 A.2d 972, 977 (N.J. 1994); *Printing Mart-Morristown v. Sharp Electronics Corp.*, 563 A.2d 31, 45 (N.J. 1989); *Lawrence v. Bauer Pub. & Printing Ltd.*, 446 A.2d 469, 473 (N.J. 1982) (holding that even a statement that plaintiffs "may be" charged with a crime defamatory as a matter of law).

[4] *LY Berditchev, Corp.*, 2023 WL 334539, at *7 (citing New Jersey cases); *Ward*, 643 A.2d at 978 (quotations and citation omitted).

4

and/or willfully and wantonly.[5]

     *False Light*.  Whether defendant (1) placed plaintiff in a false light that would be highly offensive to a reasonable person and (2) knew of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which plaintiff would be placed.[6]

     *Tortious Interference with Prospective Business Advantage*.  Whether (1) plaintiff had a reasonable expectation of economic advantage, (2) defendant intentionally and maliciously interfered with that right, (3) the interference caused the loss of the prospective gain, and (4) but for the interference, there was a reasonable probability that plaintiff would have received the anticipated economic benefits.[7]

     *Defendant's Wiretap & Invasion of Privacy Counterclaims*.  Whether (1) defendant had a reasonable expectation of privacy during any recording[8] and (2) any recording was consented to, vicariously, by S because of a good faith concern for S's safety and security.[9]  For punitive damages, if even applicable without actual damages, whether there was "an evil minded act accompanied by a willful and wanton disregard of the rights of others."[10]

---

[5] *See* N.J.S.A. 2A:15-5.12.

[6] *See Iglesias v. O'Neal*, No. CV 16-6291 (RBK/AMD), 2020 WL 416197, at *3 (D.N.J. Jan. 27, 2020).

[7] *See Printing Mart-Morristown v. Sharp Electronics Corp.*, 563 A.2d 31, 37 (N.J. 1989).

[8] *See* N.J.S.A. 2A:156A-24; 18 U.S.C.A. § 2520.  *See also Hornberger v. Am. Broad. Cos., Inc.*, 799 A.2d 566, 590-92, 595 (N.J. Super. Ct. App. Div. 2002) (discussing "reasonable expectation of privacy" in context of wiretap claim) (citing *Kee v. City of Rowlett, Tex.*, 247 F.3d 206 (5th Cir. 2001)).

[9] *See D'Onofrio v. D'Onofrio*, 780 A.2d 593, 596-98 (N.J. Super. Ct. App. Div. 2001); *Cacciarelli v. Boniface*, 737 A.2d 1170, 1173 (N.J. Super. Ct. Ch. Div. 1999) (both cases addressing "vicarious consent" to recording by child based on good faith concern for best interests of child).

[10] *M.G. v. J.C.*, 603 A.2d 990, 995 (N.J. Super. Ct. Ch. Div. 1991).

## Argument

I.    <u>Plaintiff's Claims</u>

*Defamation*.  Plaintiff will prove the elements of this claim.  **First**, defendant admits and stipulates to making and publishing the alleged defamatory statements to third parties—the internet.  On their face, at a minimum, the statements are actionable defamatory per se statements of fact, not opinion.  They accuse plaintiff of committing crimes and acts of moral turpitude, as well as engaging in dishonest and unethical conduct.  They prejudice plaintiff in her trade and profession as a lawyer and college professor.  **Second**, the defamatory statements are false: Plaintiff never transported a gun and planted it in defendant's house, nor did she conspire with her daughters L and J to frame defendant for a weapons crime.  Plaintiff's husband, Rip, who was with plaintiff during the time when the alleged transportation and planting took place, has sworn and will swear similarly.  Others witnesses may also testify to the falsity of the statements.  In truth, the gun defendant is referring to was his father's gun that had been given to defendant in 2017 and has always been in defendant's possession or on his property.  **Third**, defendant made the defamatory statements with actual malice, knowing that they were false or recklessly disregarding their truth, or at least negligently, which is all that plaintiff must prove as a private figure. Defendant's professed good-faith belief in the statements is belied by well-established circumstantial-evidence factors relevant to actual malice, such as, without limitation, contrary statements that defendant made about the gun, his lack of proof or due diligence to support the statements, and his ill will toward plaintiff.  **Fourth**, because of the defamatory per se statements, it is presumed that plaintiff suffered damages.  Defendant concedes that defamatory per se statements, like the ones at issue, entitle a plaintiff to presumed damages.  *See* ECF 124-4 (Def. Summ. J. Br.) at 15.  Plaintiff is also entitled to compensatory damages because her personal and

professional reputation—as a lawyer, college professor, and respected member of her community—has been injured and she suffered personal humiliation, mental anguish, and emotional/physical distress.  Finally, plaintiff is also entitled to punitive damages in the maximum amount.  As will be shown, defendant made the defamatory statements maliciously and/or willfully and wantonly.  He intended to destroy plaintiff in retaliation for perceived false charges made against him by her and her family.

*False Light*.  There is significant overlap between the torts of defamation and false light.  With a false light claim, however, it is not necessary that the plaintiff be defamed.  "It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."  *Savely v. MTV Music Television*, 2011 WL 2923691, at *5 (D.N.J. July 18, 2011) (quoting Restatement (Second) of Torts § 652 E cmt. b).  For the reasons why plaintiff will prove her defamation claim, she will prove the false light claim.

*Tortious Interference with Prospective Business Advantage*.  Here, as well, elements of this claim overlap with the defamation claim.  For the reasons why plaintiff will prove her defamation claim, she will prove the tortious interference claim, especially given that she and Longwood University witnesses (*see* Dawn Schwartz, Bennie Waller, and David Lehr) will testify on Claire's reasonable expectancy of promotion at the college where she teaches and the interference with that expectancy as a proximate result of the defamatory statements.

II.      Defendant's Counterclaims

*State and Federal Wiretap Claims*.  The claims will lack merit.  For example, the evidence will show that defendant had no reasonable expectation of privacy during any recording.  Moreover, the evidence will show vicarious consent to any recording, by and though a good faith

concern for the safety and security of S.[11]

*Invasion of Privacy.*  This claim will also lack merit, along the same lines as above.  The evidence will show that defendant had no reasonable expectation of privacy; that plaintiff did not intend to infringe upon defendant's privacy but for an interest to protect S; and that no damages resulted to defendant for any of his claims—indeed, defendant does not seek actual damages for any of his counterclaims.  *See* Joint Final Pretrial Order (ECF 145) at 7.

**Conclusion**

For the reasons above and presented at trial, plaintiff expects a verdict of liability and damages in her favor on the defamation and related tort claims, and a verdict of no liability (and hence no damages) on the wiretap and invasion of privacy counterclaims.

Plaintiff continues to estimate that the trial of this matter will take no more than one week.  So does defendant.  *See* ECF 146 (10/13/2023 defense counsel letter advising that the case "should take about a week to try before a jury").  This estimate, however, is subject to the presentation of relevant, non-hearsay evidence by the defendant.  This case is not any one of the protracted family law matters pending in state court involving defendant and should be presented differently.

---

[11] New Jersey courts have found vicarious consent where the recorded parent is undermining or verbally abusing the child; there is or may be sexual, emotional, or other child abuse; the recordings are made in connection with custody proceedings; the recorded parent used profanity and crude language, denigrated and demeaned the other parent, discussed the ongoing custody/divorce litigation, and spoke negatively about the guardian ad litem; the recorded parent threatened, intimidated, and verbally abused the child and was suspected of trying to undermine the relationship with the other parent.  *See, e.g., Cacciarelli* and *D'Onofrio*.  *See also Pollock v. Pollock*, 154 F.3d 601, 609 (6th Cir. 1998) (citing *State v. Diaz*, 308 N.J.Super. 504, 706 A.2d 264 (1998)).

Dated:  October 23, 2023

Respectfully submitted,

*/s/ Stephanie Imbornone*
Stephanie Imbornone, NJ: #014022011
**GORDON REES SCULLY MANSUKHANI, LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
T:  (973) 549-2503
F:  (973) 377-1911
simbornone@grsm.com

Joseph L. Meadows, VSB #92729
 (Admitted *pro hac vice*)
Courtney R. Abbott, VSB #82948
 (Admitted *pro hac vice*)
**GORDON REES SCULLY MANSUKHANI, LLP**
277 S. Washington Street, Suite 550
Alexandria, Virginia 22314
T:  (202) 399-1009
F:  (202) 800-2999
jmeadows@grsm.com
cabbott@grsm.com

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

    I, Stephanie Imbornone, Esq., hereby certify that on this 23rd day of October 2023, I caused

a true and accurate copy of the foregoing to be electronically filed and served upon all counsel of

record via ECF.  I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Stephanie Imbornone*
Stephanie Imbornone, Esq.

9